UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE MITCHELL, et al., on behalf of themselves and all other employees similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>                              Defendant. | Case No.: 3:17-cv-02014-GPC-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART REQUEST FOR EQUITABLE TOLLING**<br><br>**[ECF No. 748]** |

Before the Court is Plaintiffs' motion for (1) conditional certification of a collective action under the Fair Labor Standard Act ("FLSA") and (2) an order applying equitable tolling to the FLSA's statute of limitations. (ECF No. 748.) The motion is fully briefed. (*See* ECF No. 786 (Def.'s Opp.); ECF No. 796 (Pls.' Reply).) For the reasons set forth below, the Court finds conditional certification of a collective action appropriate in this case. As for Plaintiffs' request that the FLSA's statute of limitations be equitably tolled, the Court rejects that request on the ground of misconduct by the City of San Diego, but it grants the request as to the period that this motion was pending.

## I.    Background

Plaintiffs filed this action against the City of San Diego (the "City") on September 29, 2017, asserting that in light of the Ninth Circuit's decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the City has been miscalculating Plaintiffs' FLSA overtime premiums.  (ECF No. 1.)  The miscalculation has occurred, according to the complaint, because prior to July 1, 2017, the City excluded from its regular-rate-of-pay calculation the "annual lump sum of money, commonly known as 'flex dollars,' to be used for the purchase of health and welfare benefits . . . or otherwise taken in various forms known as 'cash-in-lieu' payments."  (*Id.* ¶¶ 9–10.)  On June 30, 2017, the City sent an email to all of its employees stating that, effective the following day, "in accordance with recent changes to federal law regarding FLSA overtime"—which the City later acknowledged was a reference to the *Flores* decision—the City "will include in an employee's FLSA overtime calculations the cash value of any flexible benefit credits that they did not use to pay for health, dental, vision or life insurance."  (*Id.* ¶ 10.)

The complaint asserts two claims.  First, Plaintiffs assert that the City improperly excluded from its regular-rate-of-pay calculation the amounts Plaintiffs received in cash-in-lieu payments (in the form of flex dollars, or otherwise).  (*Id.* ¶¶ 11–18.)  The second claim asserts that the City also unlawfully excluded from its regular-rate-of-pay calculation contributions made by the City on Plaintiffs' behalf to trustees or third parties under the City's Flexible Benefits Plan ("FBP").  (*Id.* ¶ 20.)  The complaint explains that the FLSA permits an employer to exclude such contributions from the regular-rate-of-pay calculation only if (1) the employer does not give the employee the option to receive any part of that contribution in cash, or (2) the employer gives such a cash option, but that option is an incidental part of the plan.  (*Id.* ¶ 20; *see* 29 C.F.R. § 778.215(a)(5).)  Plaintiffs allege that, "[o]n information and belief, [the] City's total cash-in-lieu of benefits payments under its FBP were sufficiently large as a percentage of [the] City's total contributions during each relevant year that these payments could not lawfully be deemed incidental."  (ECF No. 1 ¶ 21.)  Thus, "in addition to counting any cash-in-lieu of

benefits payments as remuneration when determining an employee's 'regular rate of pay' under the CLSA, [the] City was obligated to include as qualifying remuneration all 'flex dollars' which [the] City paid to trustees or third parties on an employee's behalf under its FBP." (*Id.* ¶ 22 (emphasis omitted).)  Plaintiffs allege that the City continues to exclude these contributions from Plaintiffs' regular-rate-of-pay calculation in violation of the FLSA.  (*Id.* ¶ 27.)

Plaintiffs filed this motion on March 2, 2018.  (ECF No. 748.)  On April 17, 2018, Judge Roger T. Benitez recused from the case, and the case was transferred to Judge M. James Lorenz.  (ECF No. 787.)  On April 18, Judge Lorenz recused from the case, and the case was transferred to Judge Janis L. Sammartino.  (ECF No. 788.)  On April 26, 2018, Judge Sammartion recused from the case, and the case was transferred to Judge Cynthia Bashant.  (ECF No. 801.)  On April 27, 2018, Judge Bashant submitted this motion for decision without a hearing, and separately denied a motion by the City to dismiss the complaint for failure to state a claim.[1]  (ECF Nos. 802, 803.)  On May 11, 2018, the case was transferred to this Court.  (ECF No. 806.)

In the collective action notice that Plaintiffs ask this Court to approve, Plaintiffs define the universe of employees that are eligible to receive the notice as "all current or former City employees (1) whose job classes are included in Group A, B or C of Addendum A to City's Personnel Regulation Index Code H-4; and who (2) worked and were paid FLSA overtime on or after March 2, 2015, while participating in the City's FBP." (ECF No. 748-5 at 2.)

## II.    Conditional Certification

### A. Legal Standard

Under 29 U.S.C. § 216(b), an employer who fails to pay an employee a proper

---

[1] In their papers, the parties dispute whether the then-pending motion to dismiss impacted the conditional certification analysis in this motion.  Because the motion to dismiss has since been ruled upon, the Court need not address that issue.

overtime premium "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." An action against an employer as a result of overtime underpayment "may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* "No employee shall be a party plaintiff to any such action," however, "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Thus, while employees may bring a collective action against an employer for a violation of their right to a proper overtime premium, members of the collective action must opt in to that litigation.

This Court has the power to facilitate Plaintiffs' efforts to notify individuals that might be interested in joining a collective action. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time."). In doing so, however, the Court "must be scrupulous to respect judicial neutrality" by avoiding "even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

This notice process fits within the "two-tiered" approach utilized by courts in this circuit to determine whether a class of employees is sufficiently "similarly situated" to make a FLSA collective action appropriate. In the first stage of this approach, the Court decides whether the potential class should be "conditionally certified" by considering whether Plaintiffs have shown "that they and the proposed class are similarly situated for purposes of section 216(b)." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535–36 (N.D. Cal. 2007). Plaintiffs need offer only "substantial allegations, supported by declarations or discovery." *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013). "Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically

results in conditional class certification." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). Indeed, courts in this circuit have gone so far as to refuse to "consider evidence provided by defendants at this stage." *Ramirez*, 941 F. Supp. 2d at 1203. In the second stage, "[o]nce discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class" based on three factors: (1) "the disparate factual and employment settings of the individual plaintiffs," (2) "the various defenses available to the defendants with respect to the individual plaintiffs," and (3) "fairness and procedural considerations." *Id.* (quoting *Leuthold*, 224 F.R.D. at 467).

The instant motion asks the Court to engage in the first stage of this analysis.

## B. Discussion

In addition to their allegations, Plaintiffs offer the declaration of named plaintiff Candace Mitchell. (ECF No. 748-2.) Mitchell has worked for the City for 32 years, during which she served as a Payroll Specialist, Payroll Supervisor, and currently serves as an Assistant Management Analyst. (*Id.* ¶ 2.) Mitchell explains that the City's "overtime compensation policy and practices" are found in Index Code H-4 of the City's Personnel Manual. (*Id.* ¶ 3; *see* ECF No. 748-3 at 2–11.) Addendum A to Index Code H-4 identifies three job classes eligible for premium rate overtime: Group A, Group B, and Group C. (ECF No. 748-2 ¶ 3; *see* ECF No. 748-3 at 12–26.) Mitchell was in Group A in her first position, Group B in her second, and is now in Group C. (ECF No. 748-2 ¶ 3.) Mitchell states that she has always participated in the City's FBP plan, from which she has taken a significant amount of cash-in-lieu payments. (*Id.* ¶¶ 4, 7.) Mitchell received the City's June 30, 2017 email discussing the City's planned change in how it calculates regular rate of pay. (*Id.* ¶¶ 5–6.) Mitchell notes that the City's email did indicate that the "recent change" regarding FLSA overtime—which was the *Flores* decision—"referred to a court decision which would or might entitle me to retroactive underpaid overtime." (*Id.* ¶ 6.) While Mitchell's paychecks have now increased as a result of what she assumes is the City's inclusion of cash-in-lieu payments in its overtime

3:17-cv-02014-GPC-BGS

premium calculations, she has not received retroactive payment for the City's allegedly deficient overtime payments in the last three years. (*Id.* ¶ 8.) Mitchell also asserts—based on the City's email—that the City continues to exclude from her regular-rate-of-pay calculation the City's payments to trustees or third parties to pay for Mitchell's benefits. (*Id.* ¶ 9.)

Based on their allegations and Mitchell's declaration, Plaintiffs have met their "fairly lenient" burden of showing that they and their proposed class are similarly situated. Their FLSA claims are based on the same employer policy: the City's exclusion of cash-in-lieu payments and third-party contributions from its calculation of employees' regular rate of pay. Other courts in this circuit (and at least one other circuit court) have found that a plaintiff's identification of a single employer policy causing the alleged FLSA violation satisfies the conditional certification standard. *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." (internal quotation marks omitted)); *Adams*, 242 F.R.D. at 536 ("Courts have held that conditional certification requires only that plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." (internal quotation marks omitted)); *Ramirez*, 941 F. Supp. 2d at 1205–06; *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013); *Villa v. United Site Servs. of Cal., Inc.*, No. 5:12-cv-00318-LHK, 2012 WL 5503550, at *13–14 (N.D. Cal. Nov. 13, 2012).

The City argues that conditional certification is not appropriate. First, the City points out that while the members of the proposed collective action can be grouped into three categories according to their "Group" under Addendum A to Index Code H-4, each of those groups consist of a wide variety of jobs involving different duties and responsibilities. (ECF No. 786 at 7.) The City is factually correct: Group A alone includes hundreds of different job roles. (*See* ECF No. 748-3 at 12–19.) But that fact does not defeat Plaintiffs' showing for purposes of conditional certification. As Index

Code H-4 explains, the City's overtime policy is the same for all jobs within Groups A, B, and C. (ECF No. 784-3 at 3–4 (Section III.A).) At this stage, the fact that the City's policy treated the collective action members the same is enough to grant conditional certification. The stage-one analysis does not "encompass an in-depth fact specific inquiry into topics such as job duties"; rather, to meet their burden, Plaintiffs "must only show a common legal theory upon which each member is entitled to relief such that the collective action serves as an efficient mechanism for resolving a number of disputes in one consolidated action." *White v. Rakhra Mushroom Farm Corp.*, No. CV 08-198-SU, 2009 WL 971857, at *4 (D. Or. Apr. 8, 2009) (internal quotation mark omitted). Here, the City's overtime premium calculation policy treated all members of the proposed collective action the same.[2]

The City challenges conditional certification as to Plaintiffs' second cause of action by pointing out that Mitchell's declaration offers only a conclusory assertion that, on her information and belief, the City's FBP is not a "bona fide" plan for purposes of § 207(e)(4). (ECF No. 786 at 9–10.) Whether the City's FBP is a bona fide plan, however, goes only to the merits of this case because it is relevant only to the issue of whether the City could properly exclude certain payments from its regular-rate-of-pay calculation. It is not relevant to the issue of the similarity between Plaintiffs and those they wish to represent. The sufficiency of Plaintiffs' merits allegations therefore does not impact their efforts in seeking conditional certification. *Mowdy v. Beneto Bulk Transp.*,

---

[2] The City takes issue with Plaintiffs' contention that the City has "admitted" that its overtime payments were deficient under the FLSA when it sent its June 30, 2017 email to its employees. (ECF No. 786 at 8.) The Court agrees with the City that the City did not admit any unlawful conduct in that email. The email merely notified employees that their overtime payments would soon increase due to a change in the City's premium calculation. The City also asserts that this email cannot be used to prove the City's unlawful conduct in this case because it is evidence of a subsequent remedial measure, which Plaintiffs are using to prove the City's liability. According to the City, such evidence is inadmissible under Federal Rule of Evidence 407. (*Id.* at 8–9.) The Court need not take a position on that issue at this time. For purposes of conditional certification, neither of these arguments change the fact that Plaintiffs have met their burden by identifying a single City policy that has allegedly caused all members of the putative collective action to receive inadequate overtime pay.

7

No. C 06-05682-MHP, 2008 WL 901546, at *6 (N.D. Cal. Mar. 31, 2008) ("[A]t this first stage of conditional certification, it is inappropriate for the court to entertain an inquiry on the merits.").

The City separately contends that the purposes of conditional certification are not served in this case. It first points to the fact that the Municipal Employee's Association (the "MEA")—a labor organization that represents many employees that might be part of this collective action—has already distributed two emails regarding this litigation. On September 29, 2017, MEA and its legal counsel Ann Smith sent an email to 3,475 employees of the City with the heading "ACT NOW – Join Lawsuit to Collect Overtime City Owes You." (ECF No. 786-2.) Based on the copy of the email offered by the City, there does not appear to be any other information about the lawsuit in the message. On February 5, 2018, MEA and Smith sent another email message to 3,459 employees of the City with a heading that stated "IMPORTANT INFORMATION FOR EMPLOYEES WHO WORKED OVERTIME DURING THE PAST 3 YEARS -- ACT NOW." (ECF No. 786-3.) Again, based on the copy offered by the City, there appears to be no other substantive information about the lawsuit in the message. The City contends that the purpose of conditional certification, which includes providing notice to potential plaintiffs, would not be served here because the MEA's emails already put most of the City's employees on notice of the lawsuit. The Court disagrees. As noted, the MEA's emails gave almost no information about the lawsuit.[3] The emails did not describe what the lawsuit alleged or how to join the lawsuit. In this sense, this case is analogous to *Simpkins v. Pulte Home Corp.*, where the plaintiffs' attorneys had already embarked on "an aggressive advertising campaign to solicit opt-ins" for the case. No. 6:08-cv-130-

---

[3] The Court recognizes that there may have been a hyperlink connected to a portion of the body of these two email messages. If there was such a hyperlink, the City has not indicated what information one would have found if she followed that link. The City has asserted that potential members of this collective action have already been notified of the lawsuit's details by the MEA's emails. Without the benefit of evidence to support that assertion, the Court is not prepared to take the City at its word.

Orl-19DAB, 2008 WL 3927275, at *8 (M.D. Fla. Aug. 21, 2008). The defendant argued that these advertisements rendered court-approved notice unwarranted. The court disagreed, explaining that the advertisement was "not a replacement for a targeted Court-authorized notice that fully explains the potential opt-in plaintiff's rights." *Id.* While this Court acknowledges that the MEA's emails were more targeted than the advertisements in *Simpkins*, the evidence offered by the City does not suggest that the MEA's emails explained the opt-in plaintiff's rights in this case. What's more, according to the declaration of Abby Jarl-Veltz, a Deputy Director of the City's Human Resources Department, the MEA does not represent all of the City's employees falling within Groups A, B, and C. (ECF No. 786-4 at 3.) If that is true, it is likely that at least some of the potential collective action members in this case did not receive the MEA's emails.[4]

The City also argues that sending Court-approved notices in this case will cause confusion because there are two related pending cases before this Court: *Kries, et al. v. City of San Diego*, No. 3:17-cv-01464-GPC-BGS, and *Arellano, et al. v. City of San Diego*, No. 3:18-cv-00229-GPC-BGS. The Court disagrees. To the extent that any individuals become confused upon receipt of the Court-approved notice, they would likely contact the attorneys listed on the notice to inquire about their options. Rejecting the same argument, the court in *Quiroz v. City of Ceres* explained: "[b]ecause potential plaintiffs may only participate in an FLSA collective action on an opt-in basis, it is ultimately up to those individuals to decide whether and how they wish to proceed in litigation. To the extent any parties might later dispute whether an individual may recover in multiple lawsuits, the court may resolve such a dispute at the appropriate time." No. 1:17-cv-00444-DAD-MJS, 2017 WL 2987171, at *8 (E.D. Cal. June 22, 2017).

---

[4] The City also asserts that because the MEA's emails have an option to "opt out" of further emails, the Court's sending a notice to potential members of this collective action might disturb such individuals who have already asked not to be sent further emails from the MEA. The Court rejects this argument out of hand. The Court and the MEA are different entities and serve different roles in this litigation.

The City argues that the notice proposed by Plaintiffs is improper because it suggests "that there has been a development in the lawsuit in Plaintiffs' favor triggering this additional notice, which is not the case." (ECF No. 786 at 11.) As noted above, the Supreme Court has admonished district courts to ensure conditional certification notices do not suggest "even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174. Plaintiffs' proposed order includes a red-font sentence that reads: "This is a court-ordered notice and not a solicitation from a lawyer." (ECF No. 748-5 at 1.) To ensure that the notice does not offer even an appearance of judicial endorsement, the Court orders that this language be altered to state the following: "**This is a court-ordered notice and not a solicitation from a lawyer. The fact that a court has ordered that this notice be distributed should not be taken to suggest that the court has any view of the merits of this suit.**"

The City asks that if the Court finds that notice in this case is appropriate, that the Court order the parties to "meet and confer regarding the scope of the notice and contents, as well as the City's responsibility to protect the privacy of an employee's home address and other personal information pursuant to its policies and the United States and California Constitutions." (ECF No. 786 at 12.) The Court sees no reason not to do so. As a result, within ten days of the date this order is filed, the parties shall meet and confer about the contents of the proposed notice and method of distribution.

## III. Equitable Tolling

Plaintiffs ask the Court to apply equitable tolling to the FLSA's statute of limitations in this case. Equitable tolling may be applied to the FLSA's statute of limitations when (1) "the plaintiffs actively pursued their legal remedies by filing defective pleadings within the statutory period," or (2) "where the defendants' misconduct induces failure to meet the deadline." *Adams*, 242 F.R.D. at 543. It is "extended sparingly and only where claimants exercise diligence in preserving their legal rights." *Id.* at 542. "Prior applications of equitable tolling illustrate that the inquiry should focus on fairness to both parties." *Id.* at 543.

Plaintiffs first argue that equitable tolling should apply as a result of the City's June 30, 2017 email. In Plaintiffs' view, the email's reference to a "change in federal law" should have clarified that this change was the result of a Ninth Circuit decision. By "concealing" this fact, Plaintiffs assert, the City "deflected employees' attention away from any inquiry regarding their rights to receive or claim retroactive underpaid overtime." (ECF No. 748-1 at 9.) The Court cannot read so much into the email's vague language. Plaintiffs do not identify any obligation on the part of the City to notify its employees of the *Flores* decision. *Cf. Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations."). Moreover, the City's email invited employees to email or call the City Comptroller's Payroll Section if an employee had any questions. (ECF No. 748-4.) It is very unlikely that the City's email impeded any employee's ability to assert his or her FLSA rights.

Plaintiffs also ask that the FLSA's statute of limitations be tolled for the period that this motion was pending. (ECF No. 748-1 at 14.) The City has not responded to this request. (*See* ECF No. 786 at 13–14.) Particularly in light of the fact that multiple recusals by members of this Court have delayed a ruling on this motion, the Court finds that equitable tolling for this period is appropriate. The FLSA's statute of limitations continues to run for unnamed plaintiffs in this case until they file their consent to join this collective action. *See* 29 U.S.C. § 256(b). The delay in the resolution of this motion was by no fault of Plaintiffs or the potential members of the collective action. While equitable tolling of the time this motion was pending might prejudice the City, the City chose not to respond to this request and therefore forfeited its opportunity to offer the Court any explanation of such prejudice. As a result, the Court finds it equitable to order that the FLSA's statute of limitations be tolled during the time between the date this motion was filed (March 2, 2018), and the date this order is filed.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS in part and DENIES in part

the motion. The Court GRANTS conditional certification of a class of all current or former City employees whose (1) job classes are included in Group A, B, or C of Addendum A to the City's Personnel Regulation Index Code H-4, and (2) worked and were paid FLSA overtime on or after September 29, 2014, while participating in the City's FBP.

Plaintiffs' request for equitable tolling as a result of the City's conduct is DENIED. Plaintiffs' request for equitable tolling during the pendency of this motion is GRANTED.

Within seven days, the parties shall meet and confer about the contents of the proposed notice and the method of distribution. Within ten days, the parties shall submit to the Court a joint proposed notice. If the parties cannot resolve a dispute regarding the method of distribution or the City's disclosure of employee information, the parties shall file a joint motion for resolution of dispute within ten days of the date this order is issued. Such a motion may be no longer than ten pages and must concisely describe the dispute and the parties' positions.

**IT IS SO ORDERED.**

Dated: August 6, 2018

Hon. Gonzalo P. Curiel
United States District Judge

3:17-cv-02014-GPC-BGS