1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID K. KRIES, and GARY MONDESIR, on behalf of themselves and all other employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  17-cv-1464-GPC-BGS<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT**<br><br>**[ECF NO. 571]** |
| CANDACE MITCHELL, et al., on behalf of themselves and all other employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>Defendant. | Case No. 17-cv-2014-GPC-BGS<br><br>(Consolidated with 17-cv-1464-GPC-BGS) |

1

1

2

_____

3    ALBERTO ARELLANO, MAICO                Case No. 18-cv-0229-GPC-BGS

4    ALEJO, and GARY OLLISON, on behalf      (Consolidated with 17-cv-2014-GPC-
     of themselves and all other employees
5    similarly situated,                     BGS)

6                    Plaintiffs,

7    vs.

8

9    CITY OF SAN DIEGO,

10                   Defendant.

11   _____

12

13         Before the Court is the Joint Motion to Approve the Settlement Agreement

14   between Plaintiffs in the above-captioned consolidated cases, *Kries, et al. v. City of San*

15   *Diego* ("*Kries*")*, Mitchell, et al. v. City of San Diego* ("*Mitchell*")*,* and *Arellano, et al. v*

16   *City of San Diego* ("*Arellano*") (collectively, "the Actions") and Defendant City of San

17   Diego ("Defendant" or "City") (collectively "the Parties").  ECF No. 571.  Based on the

18   papers and pleadings submitted in support of Plaintiffs' motion, and the remaining papers,

19   pleadings and Orders in this action, and for good cause shown, the Court GRANTS the

20   Joint Motion to Approve the Settlement Agreement in all respects.

21   **I.    BACKGROUND**

22         This case involves a wage-and-hour class action, wherein Plaintiffs are non-exempt

23   City employees who argue that they are entitled to overtime compensation under the Fair

24   Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and seek unpaid overtime

25   compensation, declaratory relief, liquidated damages, interest, and attorneys' fees and

26   costs on the basis of the Ninth Circuit decision *Flores v. City of San Gabriel,* 824 F.3d

27   890, 895 (9th Cir. 2016).  *Flores* held that employees who did not spend the whole of

28

1    their allocated flex benefit plan dollars received the unused portions as cash, sometimes

2    referred to as "cash-in-lieu" ("CIL") payments, and that the employee's CIL payments

3    must be included in the calculation of the regular rate of pay for overtime payments under

4    FLSA. *Flores*, 824 F.3d at 901-902. *Flores* additionally held that the total value of flex

5    benefit dollars provided by the flexible benefits plan ("FBP") became eligible for

6    inclusion in the regular rate of pay when calculating overtime payments under FLSA. *Id.*

7    at 903.

8        Here, Plaintiffs allege that the City underpaid overtime wages by excluding from

9    the regular rate of pay: (1) CIL payouts under the City's FBP ("CIL claim"), and (2) the

10   full value of the Plaintiffs' FBP flex dollars or credits ("Total FBP claim"). Plaintiffs

11   also allege that the City violated FLSA by: (1) failing to "cash out" compensatory time

12   off accrued under FLSA using a regular rate of pay that included CIL and Full FBP

13   Credits, and (2) the City used a divisor and multiplier methodology which underpaid

14   FLSA overtime by failing to allocate FBP Credits to the regular rate earned during a

15   standard 40-hour, non-overtime workweek.

16       The *Kries* action was filed on July 19, 2017, the *Mitchell* action was filed on

17   September 29, 2017, and the *Arellano* action was filed on January 31, 2018. The *Kries*

18   plaintiffs filed their action on behalf of themselves and similarly situated former and

19   current police officers employed by the City. ECF No. 571 at 7. The *Mitchell* plaintiffs

20   filed their action on behalf of themselves and all similarly situated former and current

21   full-time City employees. *Id.* The *Arellano* plaintiffs filed their action on behalf of

22   themselves and similarly situated former and current City employees holding

23   maintenance, labor, skilled trades and equipment operator positions. *Id.*

24       In *Kries*, the Court denied the Defendants' motion to dismiss the First Amended

25   Complaint (ECF No. 69) on July 18, 2018. ECF No. 143. On October 23, 2018, the

26

27                                          3

28                                                                    17-cv-1464-GPC-BGS

1    *Kries* plaintiffs filed the operative Second Amended Complaint.  ECF No. 161.  On July

2    10, 2019, the Court consolidated the Actions.  ECF No. 547.

3         The Parties agree that a total of 2,537 Plaintiffs filed timely consents to join the

4    Actions: 1,153 joined the *Mitchell* case; 897 joined the *Arellano* case; and 487 joined the

5    *Kries* case.  *Id.* at 8.[1]

6         The Parties now move for the Court to approve the Settlement Agreement, which

7    provides that the City will pay a total amount of no more than $6,199,997.98, and that

8    this amount shall include all of Plaintiffs' damages to settle all of Plaintiffs' FBP-related

9    FLSA claims raised in the Action.  ECF No. 571-2 at 6.  The Parties agree that half of

10   this total amount represents the agreed-upon overtime backpay arising from Plaintiffs'

11   claims, and the other half represents the total amount of liquidated damages arising from

12   Plaintiffs' claims.  *Id.*

13   **II.    LEGAL STANDARD**

14        FLSA was enacted to protect covered workers from substandard wages and

15   oppressive working hours.  *See Barrentine v. Arkansas–Best Freight System, Inc.*, 450

16   U.S. 728, 739 (1981); 29 U.S.C. § 202(a) (characterizing substandard wages as a labor

17   condition that undermines "the maintenance of the minimum standard of living necessary

18   for health, efficiency, and general well-being of workers").  "FLSA places strict limits on

19   an employee's ability to waive claims for unpaid wages or overtime . . . for fear that

20   employers may coerce employees into settlement and waiver."  *Lopez v. Nights of*

21   *Cabiria, LLC,* 96 F.Supp.3d 170, 175 (S.D.N.Y.2015) (internal quotation marks and

22

23   ───────────────

24   [1] Parties' counsel learned in April 2020 that 35 additional putative plaintiffs employed in lifeguard job classifications were inadvertently omitted from the City's master final mailing list of individuals who

25   were to receive notice of eligibility to join the *Mitchell* case due to a formatting error in the spreadsheet listing their names.  Adema Decl. ¶ 9.  The Parties agreed to resolve this omission by granting the 35

26   omitted lifeguards a new opportunity to consent to join the *Mitchell* action and to receive damages on the same terms described in the Settlement Agreement, using a retroactive opt-in date for their claims.

27   *Id.* ¶ 10.

4

28                                                                          17-cv-1464-GPC-BGS

1    citation omitted).  Accordingly, claims for unpaid wages under FLSA may only be

2    waived or otherwise settled if settlement is supervised by the Secretary of Labor or

3    approved by a district court.  *See Lynn's Food Stores, Inc. v. United States ex rel. U.S.*

4    *Dept. of Labor, Emp't Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1352–53

5    (11th Cir.1982); *Meza v. 317 Amsterdam Corp.,* 14–CV–9007 (VSB), 2015 WL

6    9161791, *1 (S.D.N.Y. Dec. 14, 2015) ("Parties may not privately settle FLSA claims

7    with prejudice absent the approval of the district court or the Department of Labor.")

8    (citation omitted).

9          In reviewing a FLSA settlement, a district court must determine whether the

10   settlement represents a "fair and reasonable resolution of a bona fide dispute."  *Lynn's*

11   *Food Stores*, 679 F.2d at 1355.  A bona fide dispute exists when there are legitimate

12   questions about "the existence and extent of Defendant's FLSA liability."  *Ambrosino v.*

13   *Home Depot. U.S.A., Inc*., 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014).  There must be

14   "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their

15   [FLSA] claims."  *Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164, 1172

16   (S.D. Cal. 2016).

17         After a district court is satisfied that a bona fide dispute exists, it must then

18   determine whether the settlement is fair and reasonable.  *Id.*  To determine this, courts in

19   this circuit look to the totality of the circumstances, balancing such factors as: "(l) the

20   plaintiff's range of possible recovery; (2) the stage of proceedings and amount of

21   discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4)

22   the scope of any release provision in the settlement agreement; (5) the experience and

23   views of counsel and the opinion of participating plaintiffs; and (6) the possibility of

24   fraud or collusion."  *Id.* at 1173 (S.D. Cal. 2016) (collecting cases).  A court will not

25   approve a settlement of an action in which parties attempt to settle for less than the

26   FLSA-guaranteed amount because it would shield employers from the full cost of

27

28

1  complying with the statute.  *Id.* at 1172.  The Court addresses each of these factors in

2  turn.

3  **III.    DISCUSSION**

4      **A.    Bona Fide Dispute**

5         The Court finds that this case reflects a bona fide dispute between the parties over

6  potential liability under the FLSA.  Although *Flores* established that the City owe some

7  amount of retroactive underpaid overtime to the Plaintiffs, the amount of such payment

8  owed is subject to reasonable dispute.  Specifically, the Parties point to five disputes: (1)

9  whether the City is liable on the Total FBP claim for each of the fiscal years covered by

10  the statute of limitations or for one or all of the three fiscal years included in the

11  Settlement Agreement (ECF No. 571 at 19); (2) the extent to which *Flores* applies to the

12  amount of CTO that Plaintiffs accrued and cashed out (ECF No. 571 at 20); (3) whether

13  the City can establish "subjective and objective good faith" in order to avoid paying

14  liquidated damages by showing that had no knowledge of any potential FLSA violation

15  prior to the *Flores* decision (ECF No 571 at 20); (4) whether applicable statute of

16  limitations is the baseline two-year statute of limitations under FLSA, or an extended

17  three-year statute of limitations on the basis that the FLSA violation was "willful" (ECF

18  No. 571 at 22); and (5) what methodology should be applied to calculate the amount of

19  any underpayment.  ECF No. 571 at 23-24.  The parties describe the dispute over

20  methodology to be the "largest settlement variable."  *Id.* at 17.

21         These disputes raise legitimate question over whether and the extent to which the

22  City is liable under FLSA.  The Parties have both shown legitimate arguments deserving

23  consideration and in light of these competing views, the Court finds that there is a bona

24  fide dispute between the Parties.

25  / / /

26  / / /

27

28

6

17-cv-1464-GPC-BGS

**B.    Fair and Reasonable**

Parties contend that the proposed Settlement Agreement is a fair and reasonable resolution of the parties' disputes and in furtherance of the purposes of the FLSA.  After considering the six factors outlined above, the Court finds that the Settlement Agreement is fair and reasonable under FLSA.

**1.    Plaintiff's Range of Possible Recovery**

In comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented.  *Selk*, 159 F. Supp. 3d at 1174.   The Court must consider whether the range of potential recovery bears some reasonable relationship to the true settlement value of the claims.  *Id.*  "[A] proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, the range of Plaintiffs' potential recovery varies widely depending on how the bona fide disputes between the Parties are resolved.  ECF No. 571 at 28.  Each Plaintiff's actual damages were calculated by the City's retained forensic expert and the Parties agree that these calculations were done accurately.  *Id.* at 27-28.  However, depending on whether the bona fide disputes are resolved in Plaintiffs' or Defendant's favor, Plaintiffs' total recovery can range widely.

If Plaintiffs prevail on their position that the City is liable for backpay on the CIL and CTO claims based on a three-year statute of limitations, but lose on the Total FBP claims, the total FLSA backpay for all 2,537 Plaintiffs based on the City's methodology is $354,933.46.  ECF No. 571-1 at 1, Declaration of Alison P. Adema ("Adema Decl.") ¶ 16.  If Plaintiffs prevail on their liquidated damages claim, Plaintiffs' damages would increase to $709,866.92.  *Id.*  If Plaintiffs prevail on their position that the City is liable

for backpay on all of their claims – CIL, Total FBP and CTO – based on a three-year statute of limitations, the total FLSA backpay for all 2,537 Plaintiffs based on the City's methodology is $1,634,005.90. *Id.* If Plaintiffs further prevail on their position that the City is liable for liquidated damages on these claims, Plaintiffs damages increase to $3,268,011.80. *Id.*

These recoveries assume that a statute of limitations period of three years applies, and that Plaintiffs would additionally prevail in proving that the City's FBP did not qualify as "bona fide" for the fiscal years at issue – 2017, 2018, and 2019. If the City were to prevail on its defenses to this claim for one or more fiscal years, however, Plaintiffs' recovery would be reduced proportionately. *Id.*

Under the Settlement Agreement, the City has agreed to pay a total sum of $6,199,997.98, which represents approximately twice the maximum value of Plaintiffs' damages if the City's methodology is accepted as the proper method. *Id.* at 29. The Parties note that although acceptance of the Settlement Agreement may risk decreasing the potential award for each Plaintiff, as compared to if they were successful in litigating all their claims, but that this assumption of this risk is warranted and such settlement is favored since litigation may take many more months or years, including any potential appeals. *Id.* Given the wide range of outcomes, the Court agrees with the parties' contention that there is significant risk presented by continued litigation.

## 2. Stage of Proceedings and Amount of Discovery Completed

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *Selk*, 159 F.Supp.3d at 1177 (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D.Cal.2014)). The Parties state that over the course of the two years of litigation they have engaged in sufficient informal and formal discovery – including the City's provision of information regarding FBP data, the amounts of FBP

credits, actual payroll and time records.  ECF No. 571 at 15.  Parties also state that they have conferred multiple times with the City's retained expert on his methods, work product, and calculations, and requested changes and corrections in order to arrive at a set of calculations which all Parties now believe in good faith represent a correct determination of each Plaintiff's damages.  *Id.*

The City has responded to Plaintiffs' written discovery requests; Plaintiffs have deposed City's "most knowledgeable" persons; the City has produced FBP data to show how and in what amounts FBP credits under the City's plan were allocated to cash, other forms of cash-in-lieu, and to insurance options; and finally, the City produced actual payroll and time records for all Plaintiffs to the City's retained forensic expert so that he could determine damages.  ECF No. 571 at 14.  Additionally, the Parties' counsel have conferred several times with the City's retained expert in order to ascertain his methods and examine his work product, and both have requested changes and corrections in order to arrive at a set of calculations that both Parties believe in good faith represent a correct determination of Plaintiffs' potential damages.  *Id.* at 15.  Accordingly, the Court finds that the parties have engaged in meaningful discovery and this factor favors approval of the Settlement Agreement.  *Ching v. Siemens Industry, Inc.,* No. 11–cv–04838–MEJ, 2014 WL 2926210, *5 (N.D. Cal. Jun. 27, 2014) (extent of discovery weighed in favor of approving a settlement where class counsel "conducted interviews, propounded extensive written discovery, discussed the case with opposing counsel, analyzed thousands of pages of documents, deposed Defendants' person most knowledgeable, analyzed damages, reviewed time and pay records and policy documents, and collected evidence").

### 3.  Seriousness of the Litigation Risks

The seriousness of the litigation risks also weighs in favor of approval of the Settlement Agreement.  Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all."

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 255 (N.D. Cal. 2015). If a settlement in an FLSA lawsuit reflects a reasonable compromise over issues that are actually in dispute, the "court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.' " *Selk,* 159 F.Supp.3d at 1173; *Nen Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores,* 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]").

Parties state that the Settlement Agreement provides Plaintiffs with substantial relief while continued litigation could harm Plaintiffs' interests by jeopardizing the relief which will be secured by settlement. Specifically, the Parties point to five bona fide disputes which persist and could jeopardize the recovery for Plaintiffs in the event the litigation were to continue: (1) whether the City had underpaid FLSA overtime by excluding the cash-in-lieu portion of its FBP only or by excluding the full or total FBP amount (ECF No. 571 at 18-19); (2) whether the City had underpaid compensatory time off ("CTO") by excluding FBP compensation when calculating permissible cash-outs (ECF No. 571 at 19-20); (3) whether the City should pay liquidated damages in addition to actual wage damages (ECF No. 571 at 20-22); (4) whether applicable statute of limitations is the baseline two-year statute of limitations under FLSA, or an extended three-year statute of limitations on the basis that the FLSA violation was "willful" (ECF No. 571 at 22); and (5) what methodology should be applied to calculate the amount of any underpayment. ECF No. 571 at 23-24. The parties describe the dispute over methodology to be the "largest settlement variable." *Id.* at 17.

The Parties have ultimately determined, based on the risks associated the aforementioned five bona fide disputes, that the Total Settlement Amount should equal a sum of $6,199,997.98. The damage calculations for the CIL claim and the Total FBP claim were premised on the alleged underpaid overtime and an equal amount of

10

liquidated damages.  The CIL claim used a three-year statute of limitations through June 30, 2019, from each Plaintiff's opt-in date, plus the Court-ordered five-month tolling period where applicable, reduced by application of the offsets and credits available to the City under FLSA because the City paid overtime to employees in compliance with Personnel Regulations and labor agreements which exceeded what the FLSA requires. *Id.* at 26.  The Total FBP claim used a two-year statute of limitations based on each Plaintiff's opt-in date through June 30, 2019, plus the Court-ordered five-month tolling period where applicable, but in any event not before July 1, 2016 and these calculations cover three fiscal years, from 2017 through 2019.  *Id.* at 26.  The amount of each Plaintiff's damages was reduced by application of the offsets and credits available to the City under FLSA because the City began including the CIL portion of an employee's Total FBP on July 1, 2017, and because the City paid overtime to employees in compliance with Personnel Regulations and labor agreements which exceeded what FLSA required.  *Id.* at 27.

In light of the above-referenced uncertainty, the Court find that the parties would face substantial litigation risk were this action to continue.  Further, "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."  *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009).  Accordingly, this factor supports approval of the Settlement Agreement.

### 4.  Scope of Release Provision in the Settlement Agreement

Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation, and are especially skeptical of release provisions that require employees to forfeit claims that are designed to advance public values.  *Selk*, 159 F.Supp.3d at 1178 (citing *Luo v. Zynga, Inc*., No. 13–cv–00186 NC, 2014 WL 457742 at *3 (N.D. Cal. Jan.

31, 2014)).  The underlying concern is that an overly wide-reaching release of claims may evince an attempt by an employer to use employee wages as a bargaining chip to extract valuable concessions from the employees.  *Id.*  A FLSA settlement – especially when members opt in in order to receive only unpaid wages and related damages – should generally be limited to the specific claims at issue in the lawsuit.  *Id.*  Here, the applicable release provision in the Settlement Agreement provides:

> Upon final approval by the Court of the AGREEMENT, PLAINTIFFS agree to fully discharge any and all claims, charges, grievances, complaints, allegations, and causes of action related to or arising out of the allegations made in the ACTIONS related to the treatment of FBP remuneration, whether asserted or unasserted, through the date the Court approves the AGREEMENT, and that this settlement includes all claims made in the ACTIONS for unpaid overtime based on the regular rate of pay, the payment of compensatory time off at the regular rate of pay, the methodology the City used to calculate FLSA overtime pay on FBP credits, liquidated damages, and interest ("RELEASED CLAIMS"), and PLAINTIFFS fully, finally and completely release, waive, and discharge CITY, and its elected and administrative officers, agents, employees, successors and assigns from FLSA claims related to the treatment of FBP renumeration, whether asserted or unasserted, through the date the Court approves this AGREEMENT.
>
> PLAINTIFFS acknowledge and understand that PLAINTIFFS have the right to pursue any FLSA claims related to the treatment of FBP remuneration that PLAINTIFFS might have based on events occurring or payments made after the date the COURT approves this AGREEMENT.

ECF No. 571-2 at 10.  The above language will be distributed to all Plaintiffs as an Acknowledgment and Acceptance of Settlement and Release of Claims Form which contains the following parallel release language:

> I understand and agree that my acceptance of the Agreement constitutes a full and complete settlement of all my FLSA claims related to the treatment of FBP remuneration, whether asserted or un-asserted, through the date of Court approval of the Settlement Agreement in this case, and that this settlement includes all claims made in the Action for unpaid overtime based on the regular rate of pay, the

12

payment of compensatory time off at the regular rate of pay, the methodology the City used to calculate FLSA overtime pay on FBP credits, liquidated damages, and interest, and I fully, finally and completely release, waive, and discharge the City of San Diego, and its elected and administrative officers, agents, employees, successors and assigns from FLSA claims related to the treatment of FBP remuneration, whether asserted or un-asserted, through the date of Court approval of the Settlement Agreement.  I understand that the City will pay reasonable attorneys' fees and costs which my attorneys incurred in this action based on an award subsequently approved by the Court and that this award will be in addition to the amounts paid to me and not deducted from those amounts. I further agree to dismiss, with prejudice, my claims in the Action. I understand and acknowledge that the City expressly denies liability for any and all claims or demands and that the Agreement reflects a compromise settlement of disputed claim.

ECF No. 571-2 at 126.  To receive payment under the Settlement, Plaintiffs will be required to execute and return the Acknowledgment and Acceptance of Settlement and Release of Claims Form.

The release form provides that Plaintiffs are only releasing their FLSA overtime claims related to the treatment of FBP remuneration through the date of Court approval of this Settlement Agreement and they are specifically advised of their "right to pursue any FLSA claims related to the treatment of FBP remuneration that [Plaintiff] might have based on events occurring or payments made after the date of Court approval of the Settlement Agreement.  ECF No. 571 at 16.  Plaintiffs' counsel state that they are "fully satisfied" that the agreed-upon language is narrowly tailored to bind all Plaintiffs only as to their specific FLSA claims related to FBP remuneration, whether asserted or unasserted.  The Court agrees and finds that the Parties have agreed on a narrowly-tailored release that meets the applicable standards under the FLSA.

### 5.  Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given ·considerable weight both because of counsel's familiarity with

th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.,* 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).

As an initial matter, both Parties' counsel have years of experience advocating for employees and employers in wage and hour cases. *Id.* at 29-30. Plaintiffs' counsel assert that the terms of the Settlement Agreement are "fair, just, and reasonable" sine the settlement amount for each Plaintiff represents the full potential value of their claim assuming Plaintiffs prevail on all disputed issues except methodology and, as to methodology, the City is adding to each Plaintiff's damages amount in a manner that Plaintiffs' counsel considers to be fair and reasonable. *Id.* at 29. Although both Parties disagree as to the amounts that Plaintiffs are owed based on the bona fide dispute, the Parties agree that their decision to settle according to the terms of the Settlement Agreement is prudent in order to achieve finality and certainty. *Id.* at 30. The opinions of the Parties' counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases. Therefore this factor weighs in favor of approval.

### 6. Possibility of Fraud or Collusion

The Court finds no evidence that the Settlement resulted from, or was influenced by, fraud or collusion. "A key factor supporting this finding is that the amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records." *Selk*, 159 F. Supp. 3d at 1179. "This approach guards against the arbitrariness that might suggest collusion." *Id.* Here, the Parties' Settlement does not involve a lump sum of money to be divided on an arbitrary basis by all plaintiffs but instead, the size of each Plaintiff's recovery has been calculated based on their time records and payroll data; this takes into account how much FLSA-eligible overtime each plaintiff worked, the amount of total FBP credits the Plaintiff had available, the Plaintiff's opt-in date, and the effect of permissible offsets and credits lawfully available

14

to the City.  ECF No. 571 at 12.  Additionally, the record in this case shows that the Settlement was the result of arms-length negotiations: the Parties' counsel have had conducted two in-person settlement conferences with Magistrate Bernard Skomal in December 2018 and again in May 2019, in addition to numerous telephonic conferences with Magistrate Bernard Skomal and several in-person and telephone conferences and among the Parties' counsel.  ECF No. 571-1 ¶ 11.  Accordingly, the Court finds that there is no evidence that fraud or collusion exists.

## IV.     CONCLUSION AND ORDER

The FLSA was designed "to extend the frontiers of social progress by insuring to all our able-bodied men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).  As such, the substantive labor rights provided for in the statute – including the minimum wage and maximum hour provisions – are afforded exceptionally strong protection.  *Selk*, 159 F. Supp. 3d at 1181.  When private parties submit a settlement purporting to resolve claims brought under FLSA, courts must scrutinize the settlement to ensure it represents a fair and reasonable resolution of a bona fide dispute rather than a "mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's*, 679 F.2d at 1354.  Here, after evaluating the Settlement Agreement under the totality of circumstances described above, the Court finds it to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  Accordingly, the Court GRANTS Plaintiff's motion for approval of settlement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17-cv-1464-GPC-BGS

**IT IS HEREBY ORDERED** that,

1. The Settlement Agreement submitted to the Court as Exhibit 1 to the Declaration of Alison P. Adema (ECF No. 571-2) is approved as a fair and just negotiated resolution of bona fide disputes between the Parties in these consolidated Actions, and the Parties shall fully abide by and perform the Settlement Agreement in its entirety and according to its terms;

2. The Actions are dismissed **WITH PREJUDICE** as to the 487 Plaintiffs in the *Kries* case identified on Exhibit A to the Settlement Agreement, the 1,153 Plaintiffs in the *Mitchell* case identified on Exhibit B to the Settlement Agreement, and the 897 Plaintiffs in the *Arellano* case identified on Exhibit C to the Settlement Agreement;

3. The Court reserves jurisdiction over the above-captioned matters for purposes of enforcing the Settlement Agreement, approving any resolution of claims for the 35 inadvertently omitted lifeguards in the *Mitchell* case, and determining plaintiffs' attorney fees and costs;

4. The Court directs parties to file a joint motion for approval of the settlement as to the 35 inadvertently omitted lifeguards in the *Mitchell* case on or before **August 14, 2020,** and additionally directs parties to file briefing regarding timing requirements related to the Court's approval of such a joint motion on or before <u>**July 31, 2020**</u>;

5. Because there will be additional work by plaintiffs' counsel to assist all 2,537 plaintiffs in the timely processing of their claims over a 4-month period following approval, as well as additional work to be done by counsel in the *Mitchell* Action to address and resolve the claims of 35 omitted lifeguards, the Court directs parties to file a motion for attorney fees and costs on or before October 16, 2020.  Any response will be filed on or before November 6, 2020.

16

Any reply must be filed on or before November 12, 2020.  A hearing on this matter is scheduled for **November 20, 2020** at 1:30 PM in Courtroom 2D;

6. Judgment is hereby entered on the terms set forth above.

**IT IS SO ORDERED.**

Dated:  July 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge

17

17-cv-1464-GPC-BGS